### J. W. HEAD v. THE STATE.

#### No. 4278.        Decided February 12, 1908.

**Aggravated Assault—Serious Bodily Injury—Insufficiency of Evidence.**

Where upon trial for aggravated assault, based upon an allegation of serious bodily injury, where the evidence showed that prosecutor and defendant engaged in a fight, in which defendant kicked prosecutor on the back of the head, and also on the nose, etc., and that the prosecutor was laid up two or three days only and was entirely well in eight or nine days, etc., the same was insufficient to sustain a conviction for aggravated assault, on the ground alleged in the information.

Appeal from the County Court of Dallas. Tried below before the Hon. W. M. Holland.

Appeal from a conviction of aggravated assault; penalty, a fine of $50 and thirty days confinement in the county jail.

The opinion states the case.

*Hexter & Kramer* and *A. S. Baskett,* for appellant.—Cited cases mentioned in opinion, and also Yeary v. State, 66 S. W. Rep., 1106.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of an aggravated assault on one Thompson.

Thompson testifies that he was employed by Joe E. Johnson as collector, and that he himself onwed some stock in the business; that on the 7th of October, 1907, he went to appellant's place of business to collect money on some notes that defendant was due his establishment in part payment for a buggy he had bought from Johnson. When payment was demanded, appellant told Thompson that he was not ready to pay, did not have the money, but that for him to tell Johnson he would call to see him in a few days about the matter. Thompson informed appellant that the notes were already past due, and that he would either have to have the money or the buggy, and requested appellant to show him where the buggy was, so that he could get it. Appellant informed him that he could not get the buggy, and Thompson says appellant cursed him. He told appellant not to curse him, and that probably he did not know who he was. Appellant replied that he did not care, and ordered him out of the place of business. Thompson said he would not go, that it was a public place, that he would stay there as long as he choose, and that he was not afraid of any man and could not be driven away. Appellant then raised his arm as if to strike at him, and he grabbed appellant's arms and pushed him back against the wall. They were then on the front porch. This brought on a difficulty; they fell to the floor with Thompson on top. During the struggle they fell off the porch on the ground, and appellant was on top when they reached the ground. Appellant caught Thompson by the throat with his left hand, and choked him and struck him, using his right hand as a means of hitting or striking Thompson. Several parties were onlookers at the time, and one of them said to the witness, "When you have enough say so, and we will take him off." The fight continued a little while until Thompson holloed enough, and they were separated. As appellant was being pulled off he kicked Thompson on the back of the head with his foot, raising a knot. Thompson says, after getting up he walked out to the pump and began washing his face, and while so engaged appellant walked up and kicked him on the nose, which resulted in breaking it. Dr. Milliken testified for the State that he examined Thompson's nose and found it broken, and he at first thought the injury serious, but after the result of the whole trouble and Thompson getting well, and all the facts were before him, he stated the injuries were not serious, and that the injury to the nose could not have been done with anything except some hard substance. In this respect, Dr. Milliken stated, "Considering the injuries at the time I first inspected them, and without reference to the result of same, I considered said injuries serious." He further testified that it would take usually or ordinarily three or four weeks for the injuries of this character that he saw to heal.

The facts are that Thompson remained in bed but two or three days,

and was entirely well in eight or nine days. Dr. Milliken further testified as follows: "In view of the facts as I now know them, and considering the party's condition and the length of time that it took his injuries to heal, I do not consider the injuries as serious ones. The worst that could have resulted would have been a misshapen nose, and a condition rendering breathing more difficult. That is the worst that could have happened, provided the injuries had not received proper attention. But the injuries did receive proper attention, and were entirely healed in eight or nine days."

Appellant introduced some of the bystanders, among whom were Diffendorf, Hodge, and J. R. Moss. Diffendorf testified that during their conversation on the gallery, with reference to the notes and buggy, that one word led to another, until the witness Thompson struck appellant with one hand and grabbed his arm with another, and pushed him back against the wall. That they then clinched and fell to the floor with the witness Thompson on top. They rolled off the floor on the ground and appellant was on top, and they fought until Thompson asked some one to pull him off. Moss pulled appellant off and that ended the fight. This is practically the testimony of the three witnesses mentioned, as well as appellant himself, and all four of them say that Thompson did not go to the pump and wash his face, and that appellant did not go to the pump or where Thompson was after he was pulled off of him, and they further state that Thompson got up from the ground where the fight occurred and got in his buggy and drove away. They all agreed that appellant kicked Thompson on the back of the head as they pulled him off.

It is contended that the evidence is not sufficient to sustain the allegation in the pleading that the injury was a serious one. Under the decisions of this court, in passing upon similar questions, we are of opinion that the contention is correct. See George v. State, 21 Texas Crim. App., 315; Halsell v. State, 29 Texas Crim. App., 22; and Wilson v. State, 34 Texas Crim. Rep., 64.

In the George case, supra, Judge Hurt, delivering the opinion, says: "The circumstance relied upon to show that the assault was aggravated was that a serious bodily injury was inflicted upon the person assaulted. The evidence shows that defendant during the fight bit off a small portion of the prosecuting witness' ear. The injured member was exhibited for the court's inspection, and showed that a small portion of it had been bitten off. Another witness says that 'Wilson had a piece bitten out of the rim of his ear.' The question presented is, was there shown such serious bodily injury as is contemplated by subdivision 7, article 495, Penal Code? By the term 'serious bodily injury' is meant such an injury as gives rise to apprehension,—an injury which is attended with danger. (Webster's Dictionary.) We are of opinion that the evidence fails to show such an injury."

In Halsell's case, supra, the facts show the choking of the injured party and breaking of one of his ribs. The court held that the convic-

tion was not warranted by the evidence, because the injury was not serious within the meaning of that word in the statute. Halsell knocked Fields down, and got on him, pressing his knees on his breast and choked him until he agreed to sign a letter. Fields stated that he was confined to his room about six weeks, and his father-in-law testified that Fields was unable to work for a month.

The Wilson case, supra, is a very much stronger case, we think, than the one at bar. The injured party was laid up with his injury, three knife wounds in the back, four or five days, and was attended by a physician. In this case the party was only laid up two or three days. Under these authorities, and the definition as to what it takes to constitute a serious bodily injury, we do not believe the facts justify the conviction of aggravated assault.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*